UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLY GRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 1:20-cv-2185 |
| | ) |
| BOTTCHER AMERICA CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiff, Kelly Graham ("Graham"), brings this action against Defendant, Bottcher America Corporation ("Defendant"), for unlawfully violating her rights as protected by Title VII of the Civil Rights Act of 1964 ("Title VII"). Graham also asserts claims pursuant to Indiana common law.

**PARTIES**

2. Graham has resided within the Southern District of Indiana at all relevant times.

3. Defendant is a corporation doing business within the Southern District of Indiana.

**JURISDICTION AND VENUE**

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 42 U.S.C. § 1988; and 42 U.S.C. § 2000e-5(f)(3). This Court has supplemental jurisdiction over Graham's state-law claims pursuant to 28 U.S.C. 1367(a).

5. Graham was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

6. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

7. Graham satisfied her obligations to exhaust her administrative remedies, having

timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission. The EEOC issued a right-to-sue notice to her. She now timely files her lawsuit.

8. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

9. Graham is female.

10. Graham has been diagnosed with and treated for social anxiety disorder.

11. Defendant hired Graham to be a Quality Inspector in or about July 2019. Daniela Staley ("Staley") supervised Graham.

12. Graham's work performance met or exceeded Defendant's legitimate expectations at all relevant times.

13. Starting in or about July 2019, Bryan Watters ("Watters") created a hostile work environment for Graham because of her sex/gender.

14. The harassment was severe or pervasive and altered the terms and conditions of Graham's employment.

15. Watters communicated sexually-offensive statements to Graham multiple times each week, including, but not limited to: telling her "damn" or "dang" she is hot; sending emojis of flowers and ok symbols to her; asking her to sit on his face; telling her that he had "Kelly time" every day after work where he "jerks off" thinking about her; sending a text message to another individual in which he referred to her as the "hot girl"; telling her to "just fuck" him and then he would let it go; informing her that he was with his wife the night before and could not help thinking about her; and asking her for a kiss.

16. As confirmed by Staley to Graham, Watters engaged in similar behavior toward at

least one other female employee, such as Ashley Hensley ("Hensley"). Staley told Graham that Hensley had made complaints about Watters very similar to those made by her.

17. Zachary Graham ("Z. Graham"), Graham's husband, complained, on Graham's behalf, about the sexually-hostile work environment to Defendant in or about October 2019. He submitted a list of some of the sexual harassment perpetrated by Watters to Defendant.

18. Graham then participated in a meeting with Defendant in which she complained about the harassment.

19. Graham complained about the sexually-hostile work environment to Defendant, including Staley, Plant Manager Kerry Jackson ("Jackson"), Director of Manufacturing Jeff Hoover ("Hoover"), and Human Resources Generalist Lindsay Dellinger ("Dellinger"). They told her to present future complaints about Watters to Hoover or Dellinger and that they did not want her to quit.

20. Defendant took no legitimate actions designed to address the hostile environment after Graham and Z. Graham complained. The harassment by Watters continued unabated.

21. Watters ratcheted up the harassment in a sexual and retaliatory manner. He walked multiple times behind Graham within six to seven inches of her body in a sexual manner. He made multiple sexual and/or retaliatory statements to her between in or about November 2019 and on or about January 9, 2020, including, but not limited to: stating that she had herpes and is doing meth; cursing at her; asking her what the "fuck" she thought she was doing; and telling her to not "fucking talk" to him. His actions were severe or pervasive and further altered the terms and conditions of her employment. His actions created a retaliatory hostile work environment for her as well as a continuation of the sexually-hostile work environment.

22. Graham further complained about Watters to Defendant between in or about November 2019 and on or about January 9, 2020.

23. On or about January 8, 2020, Graham, Z. Graham, and Watters were ordered to participate together in a meeting with management. She asked Hoover and Staley not to require her to participate in a meeting with Watters.

24. That same day, Graham attempted to give a verbal list of Watters' continuing harassing actions to Hoover. Hoover refused to accept the list when he interrupted her to declare: "This is kindergarten bullshit. Enough is enough. We are not spending any more time on this. Get along, or you will lose your jobs."

25. Graham verbally provided her list of Watters' harassing actions to Jackson. Human Resources Director Nancy Pushkin later told Jackson and Hoover that they had to get the issue figured out that day.

26. Defendant again took no legitimate actions designed to address the hostile environment.

27. On or about January 9, 2020, Hoover advised Graham that he was aware she had visited Dellinger's office and further stated: "You were told not to be in Lindsay Dellinger's office. We heard you were in there today complaining. We have spent too much time on this. Enough is enough. Don't come back until we call you."

28. Defendant suspended Graham on or about January 9, 2020.

29. On or about January 14, 2020, and on the heels of Graham's statutorily-protected conduct, Jackson and Dellinger told Graham that Defendant was firing her.

30. Defendant has accorded more favorable treatment to similarly-situated employees

outside of Graham's protected classes.

31.     Defendant fired Graham because of her sex and/or her statutorily-protected complaints.

32.     All reasons proffered by Defendant for adverse actions it took regarding Graham's employment are pretextual.

33.     Graham has suffered injury and harm as a result of Defendant's unlawful actions, including, but not limited to, lost wages, lost benefits, emotional distress, inconvenience, humiliation, embarrassment, anger, disgust, frustration, and similar emotions.

## COUNT I

## SEX HARASSMENT – TITLE VII

34.     Graham hereby incorporate paragraphs 1-33 of her Complaint.

35.     Defendant created a sexually-hostile work environment for Graham.

36.     Graham complained about the sexually-hostile work environment to Defendant, but it took no legitimate action designed to remedy the harassment.

37.     Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Graham's rights as protected by Title VII.

## COUNT II

## RETALIATION – TITLE VII

38.     Graham hereby incorporate paragraphs 1-37 of her Complaint.

39.     Graham complained about sex harassment to Defendant.

40.     Defendant, through Watters, created a retaliatory hostile work environment for Graham after she had opposed his sexual harassment. The retaliatory harassment was severe or

pervasive and altered the terms and conditions of her employment. She complained about the ongoing harassment to Defendant, but it took no legitimate action to remedy the harassment.

41. Defendant fired Graham because of her statutorily-protected activities.

42. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Graham's rights as protected by Title VII.

## COUNT III

### NEGLIGENT RETENTION AND SUPERVISION

43. Graham hereby incorporate paragraphs 1-42 of her Complaint.

44. Defendant negligently retained and supervised Watters in violation of Indiana common law.

45. Graham suffered injury as a result of Defendant's negligent retention and supervision of Watters.

### REQUESTED RELIEF

WHEREFORE, Plaintiff, Kelly Graham, by counsel, respectfully requests that this Court find for her and order that:

1. Defendant reinstate Graham to the same position, salary, and seniority, or pay front pay and benefits to her in lieu of reinstatement;

2. Defendant pay lost wages and benefits to Graham;

3. Defendant pay compensatory and punitive damages to Graham;

4. Defendant pay pre- and post-judgment interest to Graham;

5. Defendant pay Graham's attorneys' fees and costs incurred in litigating this action; and

6. Defendant pay to Graham any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

Respectfully submitted,


John H. Haskin, Attorney No. 7576-49
Bradley L. Wilson, Attorney No.  21154-49
JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana  46204
Telephone:	(317)955-9500
Facsimile:	(317)955-2570
Email:	jhaskin@jhaskinlaw.com
	bwilson@jhaskinlaw.com
Attorneys for Plaintiff
Kelly Graham


## DEMAND FOR JURY TRIAL

Plaintiff, Kelly Graham, by counsel, respectfully requests a jury trial for all issues deemed triable.

Respectfully submitted,


John H. Haskin, Attorney No. 7576-49
Bradley L. Wilson, Attorney No.  21154-49
JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana  46204
Telephone:	(317)955-9500
Facsimile:	(317)955-2570
Email:	jhaskin@jhaskinlaw.com
	bwilson@jhaskinlaw.com
Attorneys for Plaintiff
Kelly Graham